[Cite as *State v. Thigpen*, 2014-Ohio-207.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 99841

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LORENZO J. THIGPEN

DEFENDANT-APPELLANT

**JUDGMENT:**
REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-563007

**BEFORE:** Boyle, A.J., McCormack, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** January 23, 2014

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender
BY:   Jeffrey M. Gamso
           Cullen Sweeney
Assistant Public Defenders
310 Lakeside Avenue
Suite 200
Cleveland, Ohio   44113

Lorenzo Thigpen, pro se
No. 0172437
P.O. Box 5600
Cleveland, Ohio   44101


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:   Blaise D. Thomas
           Yosef M. Hochheiser
Assistant County Prosecutors
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, A.J.:

**{¶1}** This cause came to be heard upon the accelerated calendar pursuant to App.R. 11 and Loc.R. 11.1.

**{¶2}** Defendant-appellant, Lorenzo Thigpen, appeals from a trial court's judgment revoking its prior decision four days earlier where it had granted his motion to represent himself after a hearing. He raises one assignment of error for our review: "The trial court committed error and denied appellant his rights under the constitutions of the United States and of Ohio when it wrongfully revoked his properly granted right to self-representation." We find merit to his argument and reverse and remand.

Procedural History

**{¶3}** In June 2012, Thigpen was indicted on ten counts: two counts of aggravated murder, one count of murder, two counts of burglary, and one count each of grand theft, tampering with evidence, gross abuse of a corpse, failure to comply, and receiving stolen property. Thigpen pleaded not guilty to all charges at his arraignment. The trial court appointed two attorneys to represent him as defense counsel.

**{¶4}** Nine months later, on April 2, 2013, after extensive discovery and 19 pretrials, Thigpen filed a notice of appearance and notice of termination of representation. The trial court held a lengthy hearing on Thigpen's motion.

**{¶5}** At the hearing, Thigpen informed the trial court that he wished to proceed pro se because his attorneys "keep trying to get [him] to cop out and [he was] not the type to cop out." The trial court asked Thigpen if his attorneys had "done all the discovery"

in his case. Thigpen replied that they would not "share information with [him]." One of Thigpen's counsel replied that he and Thigpen's other counsel had a "number of contact visits," where they reviewed discovery with Thigpen.

{¶6} The trial court proceeded to explain to Thigpen — and ensure that he understood — that his two attorneys had each been lawyers for more than 20 years and that both of them had extensive experience in representing criminal defendants. The trial court further informed Thigpen that he would be held to the same rules of evidence that binds all lawyers; that he would be bound by the rules of criminal procedure, just as any other lawyer would; that the court could not give him legal advice or assist him during the trial; that he was giving up certain rights on appeal because he could not claim that he did not have effective and proper legal counsel; that he could not walk around the courtroom during trial or handle weapons or approach witnesses; and that he would be accompanied at all times by armed deputies. Thigpen indicated that he understood all of the warnings given to him by the trial court.

{¶7} The court also reviewed each count with Thigpen, ensuring that he understood what he was charged with, as well as the penalties associated with each charge. At the trial court's request, Thigpen explained each offense in his own words, and expressed knowledge of the maximum sentence he could receive for each one. Thigpen also said that he understood that there were possible affirmative defenses and mitigating evidence that an attorney would be better equipped to present to the jury.

{¶8} The trial court then asked Thigpen if he knew of possible defenses that he

might be able to present at trial. Thigpen told the court that his defense was that he did not commit the crimes. The trial court asked Thigpen if that was his only defense. Thigpen replied "[r]ight now, but I will be doing my homework." The trial court told Thigpen, "Sir, trial is in two weeks." Thigpen responded, "I did not consent on going to trial." The following exchange then took place.

The Court: Well, you are asking to represent yourself at trial.

[Thigpen]: I am asking to represent myself period. I am not going to consent on trial.

The Court: We're here today talking about whether or not you can represent yourself at trial. Now, excuse me, but listen. Hear me out. If you are saying I want to represent myself everywhere, but not at trial, you have to tell me that. You are going to trial. So if you are saying I am opposing the fact of going to trial, that has been overruled. Forget that. We are going to trial. Now, I need to know do you want to represent yourself at a trial in front of a jury?

[Thigpen]: I did not consent to going to trial.

The Court: I understand you are not consenting. I am overruling that. Do you want to represent yourself at trial in front of a jury?

[Thigpen]: I want to represent myself. I am not going to trial. I am not going to trial. I deny any consent to going to trial. I deny my consent to going to trial.

The Court: Do you want to represent yourself at trial in front of a jury or not?

[Thigpen]: Yes, ma'am.

The Court: We have that understanding. Trial is * * * April 29th. Today is April 11th. That's 18 days.

**{¶9}** The trial court then proceeded to return to the topic of informing Thigpen of some of the possible defenses that he may be able to present. Thigpen first stated again that he did not consent to going to trial, but then indicated that he was aware of all of the possible defenses. The trial court asked Thigpen "what makes you think that you are capable of representing yourself in front of a jury at trial?" Thigpen replied, "I am capable, your Honor. I am competent and capable."

**{¶10}** Thigpen went on to tell the court five more times that he did not consent to trial. Each time, the court indicated that it understood that, but then told him that he was going to trial. At one point, the trial court asked Thigpen: "I need to understand why you think that you are not going to trial because that cuts real deep into a finding that you are competent to represent yourself." Thigpen replied,

> [b]ecause I entered a denial. I wish not to move forward. I entered a denial. That's a denial. That's what that rescission of the plea is, that's what a denial is for this. It's alleged charges. I deny those alleged charges. They have to prove those alleged charges. It's with insufficient evidence.

**{¶11}** The court explained that the state has to prove each material element of each offense at trial on April 29th. Thigpen replied, again, that he did not consent on going to trial.

**{¶12}** The trial court continued to extensively warn Thigpen about the perils of trying his case without an attorney, including how an attorney could better call witnesses to court, question witnesses, and ensure that he does not inadvertently waive his right to self-incrimination. The trial court further asked Thigpen: "Do you understand that you will be required to conduct yourself in a professional and respectful manner to the court

and to all of the witnesses involved in this case at all times?" Thigpen replied that he did. The court then warned him that if he did not conduct himself "in such a manner" that it "may revoke [his] right to self-representation or may take further action as may be necessary including an order that [he] be removed from the courtroom by force, if necessary."

{¶13} The trial court concluded that Thigpen was making a knowing, voluntary, and intelligent waiver of his right to counsel.

{¶14} In its judgment entry granting Thigpen's motion, the trial court stated:

The court after having a lengthy colloquy, including the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges, the perils of proceeding pro se, and all other facts essential to a broad understanding of the entire case, finds that the defendant has made a knowingly, intelligently, and voluntarily waiver of his right to counsel[.]

{¶15} The trial court appointed Thigpen's two original defense attorneys as stand-by counsel, over Thigpen's objection.

{¶16} Four days later, the trial court held a hearing with Thigpen, the state, and stand-by counsel because the trial court learned that Thigpen refused to accept discovery on his case from the state and from stand-by counsel. At the hearing, the state indicated that, with the exception of two videos, it had duplicated and attempted to give to Thigpen the entire 1,508 pages of discovery in the case.

{¶17} Thigpen stated, "I refuse that discovery, Your Honor." Thigpen explained that he was "not waiving [his] right to discovery, but [he was] refusing discovery from the

state on the timing." Thigpen stated that he asked for that discovery "17 and a half months ago, and it's late[,]" so he refused to accept it.

{¶18} The trial court stated for the record that stand-by counsel also "made Herculean efforts to copy all of the discovery" and get it to Thigpen the day after Thigpen was permitted to represent himself, and Thigpen rejected discovery from them as well.

{¶19} In its judgment entry revoking Thigpen's right to represent himself, the trial court explained:

> [U]pon continued and studied reflection and in light of Thigpen's refusal to accept discovery, it appears to this court the defendant does not intend to represent himself, but rather is more interested in obstructing the judicial process. Without discovery defendant would be unable (as would anyone) to effectively provide representation and would therefore be rendered incompetent for pro se representation.

> Reviewing testimony from the 4/11/2013 hearing, defendant repeatedly stated that he did not consent to trial. (See transcript p. 36, 37, 38, 42, 43, 50, 51, 58.) This court was unsure of defendant's motives at that time, however his actions [at the hearing], and [refusing to accept discovery] and this morning [at the hearing] have now clarified his true intention. The court finds this behavior is solely intended to obstruct and interfere with the trial scheduled for April 29, 2013 and is not premised upon any specific dissatisfaction with the representation by these attorneys.

{¶20} The trial court revoked its prior order, removed Thigpen as counsel, and reappointed Thigpen's original defense attorneys to the case.

{¶21} Subsequently, Thigpen's counsel moved for Thigpen to have a competency assessment. The court's psychiatric clinic determined that Thigpen was competent to stand trial.

**{¶22}** On the day of the scheduled trial, Thigpen filed a notice of appeal, raising his sole assignment of error, namely, that the trial court was denying his right to represent himself.

<u>Right to Self-Representation</u>

**{¶23}** The Sixth and Fourteenth Amendments of the United States Constitution guarantee that persons brought to trial in any state or federal court must be afforded the right to the assistance of counsel before they can be validly convicted and punished by imprisonment. *See Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799. In some cases, defendants choose to forgo that right and represent their own interests before a criminal tribunal. That is also their right under the constitutions of this state and this nation. *State v. Reed*, 74 Ohio St.3d 534, 535, 660 N.E.2d 456 (1996), citing *Faretta v. California*, 422 U.S. 806, 821, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). "If a trial court denies the right to self-representation, when properly invoked, the denial is per se reversible error." *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, ¶ 32, citing *Reed*.

**{¶24}** In *Faretta*, which was a landmark case, the United States Supreme Court explained:

> It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts. But where the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imperfectly. To force a lawyer on a defendant can only lead him to believe that the law contrives against him. Moreover, it is not inconceivable that in some rare instances, the defendant might in fact present his case more effectively by conducting his own defense.

Personal liberties are not rooted in the law of averages. The right to defend is personal. The defendant, and not his lawyer or the state, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of "that respect for the individual which is the lifeblood of the law." *Illinois v. Allen*, 397 U.S. 337, 350-351, 90 S.Ct. 1057, 25 L.Ed.2d 353 [1970] (Brennan, J., concurring).

*Faretta* at 834.

**{¶25}** When defendants manage their own defense, they relinquish, "as a purely factual matter, many of the traditional benefits associated with the right to counsel." *Id.* For this reason, in order to represent themselves, defendants must "knowingly and intelligently" forgo those relinquished benefits. *Id.* at 835. Although defendants do not need to have the skill and experience of a lawyer to competently and intelligently choose self-representation, they should be made aware of the dangers and disadvantages of self-representation, so that the record establishes that they know what they are doing and their "choice is made with eyes open." *Id.*

**{¶26}** A defendant's right to self-representation, however, is not absolute. *Martinez v. Court of Appeal of California*, 528 U.S. 152, 161, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000). Because the dangers involved in waiving the right to representation are significant, and because this right can be used as a tactic to delay trial and disrupt otherwise orderly proceedings, it must be clearly and unequivocally asserted in a timely manner or it will be waived. *See Cassano* at ¶ 41-42 (Cassano's request was untimely

because he made it after being represented for over ten months and only three days before the trial was to start).

{¶27} Further, there will be times when "the government's interest in ensuring the integrity and efficacy of the trial will outweigh the defendant's interest in acting as his own lawyer." *Martinez* at 162. Therefore, when a defendant elects to represent him or herself at trial in a criminal proceeding, and the defendant's conduct, following a warning to desist, is so disruptive that it threatens the integrity and efficacy of the trial, he or she has forfeited the right to self-representation. *See United States v. Young*, 199 F.Supp.2d 697 (S.D.Ohio 2001) (the trial court may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct).

{¶28} To establish an effective waiver of the right to counsel, the trial court must make a sufficient inquiry to determine whether the defendant fully understands and intelligently relinquishes that right. *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976), paragraph two of the syllabus. Crim.R. 44(A) also provides that a defendant is entitled to counsel "unless the defendant, after being fully advised of his right to assigned counsel, knowingly, intelligently, and voluntarily waives his right to counsel." The United States Supreme Court, however, has not prescribed a precise formula or script that must be read to defendants who indicate that they desire to proceed without counsel. *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 101. Instead, to be valid, a waiver of the right to counsel

> must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments

thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.

*State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 40.

**{¶29}** In *Faretta* at 835-836, the United States Supreme Court concluded:

Here, weeks before trial, Faretta clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel. The record affirmatively shows that Faretta was literate, competent, and understanding, and that he was voluntarily exercising his informed free will. The trial judge had warned Faretta that he thought it was a mistake not to accept the assistance of counsel, and that Faretta would be required to follow all the "ground rules" of trial procedure. We need make no assessment of how well or poorly Faretta had mastered the intricacies of the hearsay rule and the California code provisions that govern challenges of potential jurors on voir dire. For his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself.

**{¶30}** Finally, the denial of the right to self-representation amounts to structural error. *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) "[S]tructural defects * * * defy analysis by 'harmless-error' standards" because they "affec[t] the framework within which the trial proceeds," and are not "simply an error in the trial process itself." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148-149, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006) ("Since the right to self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis").

## Analysis

**{¶31}** Thigpen argues that from the time of the first hearing, where the trial court found that he was voluntarily, knowingly, and intelligently waiving his right to counsel, to

the time that the trial court revoked his waiver of counsel four days later, "[o]nly one thing had changed: [he] refused to accept discovery." Thigpen maintains that "[t]here is no rule requiring a criminal defendant to seek or accept discovery." He contends that the fact that he refused to accept discovery did not indicate any intent on his part "to obstruct or interfere with the process of his case," and at most, it indicated "that he was making eccentric choices based on misunderstanding of the law."

{¶32} The state counters that although there is no criminal rule requiring a defendant to either seek or accept discovery, pro se litigants are held to the same standards as other attorneys, and therefore, Thigpen was "expected to fully and zealously represent himself." The states maintains that despite Thigpen telling the court that he would be prepared for trial, "his actions confirmed otherwise." The state argues that without discovery on his case, Thigpen could not be serious about representing himself and it proved that he was only trying to delay and obstruct trial.

{¶33} We agree with Thigpen. Crim.R. 16 does not require a defendant to demand or accept discovery from the state. Crim.R. 16 is implicated "upon receipt of written demand for discovery by the defendant." Crim.R. 16(B). Once Thigpen was permitted to represent himself, he did not file a written demand for discovery. Further, when he refused discovery from the state and stand-by counsel, he did not move to continue his trial.

{¶34} The state also argues that Thigpen's motion to represent himself was untimely. This argument is without merit. The trial court did not consider the timing

of Thigpen's motion to be a delay tactic. And despite Thigpen filing his motion 18 days before trial was to begin, the trial court found that he was making an intelligent, voluntary, and knowing waiver of his right to counsel at the first hearing.

{¶35} At the April 11, 2012 hearing, the trial court conducted a sufficient inquiry to determine whether Thigpen fully understood his right to counsel that he was waiving and to ensure that he was intelligently, knowingly, and voluntarily relinquishing that right. The trial court warned Thigpen extensively about the dangers and disadvantages of self-representation. The trial court further advised Thigpen of the nature of the charges against him and the range of possible sentences for each charge, as well as advised him of possible defenses and applicable mitigating circumstances. The trial court even had Thigpen explain each charge in his own words to ensure that he understood them. Further, Thigpen explained the process of voir dire to the trial court, saying he learned how it was done through his "years of being in trouble." It is clear that throughout the hearing — despite the perils of self-representation — Thigpen remained unequivocal in his request to represent himself.

{¶36} Further, the fact that Thigpen kept insisting at the April 11 hearing that he did not consent to trial does not evince that he was attempting to delay or obstruct trial. He acknowledged that he understood that his trial would occur on the date it had been set for, even if he did not consent to it, and he further stated that he wished to represent himself at trial in front of the jury. His insistence in placing the fact that he did not consent to trial may have shown his lack of legal knowledge, but as the United States

Supreme Court explained in *Faretta*, 422 U.S. 806, 821, 95 S.Ct. 2525, 45 L.Ed.2d 562, Thigpen's "technical legal knowledge" was not "relevant to an assessment of his knowing exercise of the right to defend himself." *Id.* at 836.

{¶37} There is simply nothing in the record to establish that Thigpen's discovery refusal was a delay tactic or an obstruction of an otherwise orderly proceeding. That is not to say that at anytime Thigpen's conduct does obstruct the integrity and efficacy of the proceedings, the trial court cannot revoke his right to represent himself. The trial court maintains the authority to revoke Thigpen's self-representation prior to and throughout his trial.

{¶38} Accordingly, we sustain Thigpen's assignment of error.

{¶39} Thigpen moved to file an amended pro se assignment of error, arguing that the trial court and this court lacked subject matter jurisdiction over him. Thigpen repeatedly argued to the trial court that he did not "consent to trial" because he declared himself a "sovereign citizen." Although we are denying his pro se motion as moot, we note that the trial court and this court absolutely have subject matter jurisdiction over him. Thigpen's arguments are frivolous and have been held to be delay tactics. *See*, *e.g.*, *United States v. Benabe*, 654 F.3d 753, 761-767 (7th Cir.2011); *United States v. Hilgeford*, 7 F.3d 1340, 1342 (7th Cir.1993); *Maxwell v. Snow*, 409 F.3d 354, 358 (D.C.Cir.2005). Upon remand, we highly recommend Thigpen focus on representing himself and defending his case and not waste the court's time arguing this issue. Again,

we emphasize that the trial court maintains the authority to revoke Thigpen's self-representation prior to and throughout his trial.

**{¶40}** Judgment reversed and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, ADMINISTRATIVE JUDGE

EILEEN T. GALLAGHER, J., CONCURS;
TIM McCORMACK, J., DISSENTS WITH SEPARATE OPINION

TIM McCORMACK, J., DISSENTING:

**{¶41}** I respectfully dissent from the majority opinion's disposition of this appeal. As the majority correctly states, the constitutions of this state and this nation afford a criminal defendant the right to self-representation. That right, however, is not absolute. The interest in ensuring the integrity and efficiency of the trial can, at times, outweigh a criminal defendant's interest in acting as his own lawyer. While the trial court in this case initially determined that Thigpen was competent and he knowingly,

intelligently, and voluntarily waived his right to counsel, an otherwise competent defendant may be denied the right to proceed pro se when his request is shown to be manipulative.

{¶42} Here, the trial court revoked its decision to allow Thigpen to proceed pro se four days after allowing Thigpen to waive his right to counsel, finding that Thigpen's true approach and intentions were purposeful delay tactics meant to obstruct the judicial process. In support of its decision, the trial court concluded that, based upon Thigpen's refusal of discovery because it was "late," his repeated refusal to "consent" to going to trial, and his behavior at the hearings, Thigpen never actually intended to represent himself.

{¶43} Trial judges are held to strict standards. They must, on an hourly basis, arbitrate the meaning and application of our constitutions, statutes, legal precedents, court rules, and procedures. Any significant deviation from an accepted range invites the sanction of reversal.

{¶44} When and where a criminal defendant demands to represent himself during a felony murder trial, as in this case, the trial judge must give full and fair consideration to the accused's demand. Multiple decisions at both the state and federal levels make that clear. Where the demand is made in good faith, and where the demand can be accommodated without inherently violating the accused's right to fair and timely due process, then the demand must be accommodated.

**{¶45}** There is, though, nothing to be found in our constitutions, statutes, or stare decisis that would render a trial judge a mannequin, an empty robe, an arbiter devoid of real-time judgment. If, as in this matter, the trial judge determines in his or her best real-time judgment that the demand for self- representation is actually a subterfuge, a charade, a well-planned cynical tactic to confuse and prolong the administration of justice, then we ought not undercut that front line decision of the trial court to deny the motion.

**{¶46}** Good faith thought and determination are mandated. Nothing therein though favors the surrender of a courtroom to a defendant who has repeatedly demonstrated that he is dedicated to stripping the court's authority to administer fair and practical justice.

**{¶47}** Having the benefit of observing Thigpen's behavior and listening to his rhetoric throughout the proceedings, the trial court was in the best position to distinguish between a manipulative effort and a sincere desire to proceed pro se. *See State v. Halder*, 8th Dist. Cuyahoga No. 87974, 2007-Ohio-5940; *see also United States v. Frazier-El*, 204 F.3d 553, 560 (4th Cir.2000). I would therefore find that the trial court acted within its discretion when it revoked its decision to allow Thigpen to proceed pro se. I would respectfully submit that the record supports the trial court's conclusion.