[Cite as *State v. Williams*, 2014-Ohio-1057.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   99859

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ALAN S. WILLIAMS

DEFENDANT-APPELLANT

## JUDGMENT:
### VACATED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-12-561112-A

**BEFORE:**   E.A. Gallagher, J., Jones, P.J., and Stewart, J.

**RELEASED AND JOURNALIZED:**   March 20, 2014

**ATTORNEY FOR APPELLANT**

Richard E. Hackerd
2000 Standard Building
1370 Ontario Street
Cleveland, OH    44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By:   John F. Hirschauer
Assistant County Prosectuor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH   44113

EILEEN A. GALLAGHER, J.:

{¶1} In this accelerated appeal, defendant-appellant Alan Williams appeals his convictions from the Cuyahoga County Court of Common Pleas. For the following reasons, we vacate the convictions and remand for a new trial.

{¶2} A true bill indictment was returned against Williams charging him with four counts of aggravated robbery, six counts of kidnapping and four counts of robbery. Each count contained one- and three-year firearm specifications. Williams pled not guilty to the indictment, was found to be indigent and was assigned counsel.

{¶3} On September 10, 2012, Williams filed a pro se motion asserting that he was incompetent to stand trial and that he was unable and unwilling to work with his assigned counsel. The trial court granted Williams' motion for a competency evaluation and referred him to the court psychiatric clinic. The trial court also granted a motion to withdraw filed by Williams' assigned counsel. The trial court assigned new counsel.

{¶4} On October 19, 2012, the trial court issued a journal entry stating that the parties had stipulated to a competency evaluation prepared by the court psychiatric clinic. On November 5, 2012, Williams filed a pro se motion objecting to what he termed a "fraudulent docket entry" which was entered on October 19, 2012. Williams asserted that he did not stipulate to competency and demanded a hearing. Williams also filed a pro se motion to waive his right to counsel and represent himself, citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

{¶5} On January 4, 2013, the trial court conducted a competency hearing. Dr. James Rodio testified that he had evaluated Williams and prepared a competency report. He testified that Williams suffered from polysubstance dependence and that IQ testing placed Williams into a range of mild mental retardation. However, he opined that Williams understood the nature and objectives of the proceedings against him and that he was capable of assisting in his defense. Dr. Rodio's competency report was admitted into evidence without objection. Based upon the report and testimony of Dr. Rodio, the trial court found Williams competent to standing trial.

{¶6} The trial court next addressed Williams' motion to waive counsel and proceed pro se. The court stated "the defendant right now has a pending motion to determine competency based upon a very well-written motion pro se by the defendant that he filed." The trial court began by reviewing the indictment and possible penalties with Williams. After doing so, the court asked Williams if he understood what the court had explained to him. Williams replied, "I heard what you said." The trial court stated that it believed Williams was playing word games with his response and adjourned the hearing.

{¶7} The court again addressed the matter on January 23, 2013, and without engaging Williams in any further questioning regarding his waiver of counsel, found that Williams was incapable of making a knowing, intelligent and voluntary waiver of his right to counsel. The trial court explained that it reached this conclusion based on the

testimony of Dr. Rodio regarding Williams' IQ and Williams' responses to the court's inquiry regarding his knowledge of the law and ability to represent himself.[1]

{¶8} The case proceeded to a jury trial and Williams was convicted on all counts. At sentencing, the trial court merged, as allied offenses, the separate charges relating to each individual victim. The trial court imposed a seven-year prison term on each of the six counts that remained after merging allied offenses and ordered the sentences to be served consecutively to one another as well as consecutively to a single three-year firearm specification sentence for a cumulative prison term of 45 years. Williams appeals, asserting the following sole assignment of error:

> The trial court committed reversible error when it denied Williams' motion to proceed pro se in violation of the rights guaranteed under the Sixth and Fourteenth Amendments to the United States Constitution and Article 1.10 [I, section 10]of the Ohio Constitution.

{¶9} Williams argues that the trial court improperly denied his right to represent himself at trial. We find merit to Williams' argument for two reasons. First, the trial court failed to properly engage Williams in a thorough examination to determine if his waiver of counsel was knowingly, intelligently and voluntarily made. Second, even if the trial court had properly engaged Williams in a waiver colloquy, the trial court's determination that Williams was incapable of making a knowing, intelligent and a

---

[1]The trial court's journal entry of January 23, 2013, indicates that Williams has an IQ of 56. The court psychiatric clinic's competency evaluation reported Williams' IQ as 56 as well. Those results place Williams in the "mild" range of mental retardation for measured intelligence.

voluntary waiver of his right to counsel due to his intelligence level and his lack of legal knowledge is contrary to law.

{¶10} The Sixth Amendment to the United States Constitution provides that defendants shall have the right to have the assistance of counsel for their defense. While a defendant has a right to counsel, the defendant may also waive that right when the waiver is voluntary, knowing and intelligent. *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976), citing *Faretta*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

{¶11} "To establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right." *Gibson*, at paragraph two of the syllabus.

> Although there is no prescribed colloquy in which the trial court and a pro se defendant must engage before a defendant may waive his right to counsel, the court must ensure that the defendant is voluntarily electing to proceed pro se and that the defendant is knowingly, intelligently, and voluntarily waiving the right to counsel.

*State v. Ford*, 8th Dist. Cuyahoga No. 86951, 2006-Ohio-3723, ¶ 63, citing *State v. Martin*, 8th Dist. Cuyahoga No. 80198, 2003-Ohio-1499.

> Specifically, the trial court must advise the defendant of the nature of the charges against him, the range of allowable punishment, the possible defenses, any mitigating circumstances, and the dangers of self-representation.

*Id*.

{¶12} "[O]nce the appellant clearly and unequivocally informed the trial court that he wished to represent himself, the court was obligated to determine whether the defendant knowingly, voluntarily and intelligently waived his right to counsel." *State v.*

*Watson*, 132 Ohio App.3d 57, 66, 724 N.E.2d 469 (8th Dist.1998). A court's failure to so inquire violates a defendant's Sixth Amendment right to defend himself. *Id*. The proper result where a trial court fails to properly inquire is a vacation of the defendant's conviction and a remand for a new trial. *Id*.

{¶13} In the present case, the record reflects that Williams clearly and unequivocally informed the trial court of his desire to proceed pro se. Although the trial court began to engage Williams in a colloquy to determine whether his waiver was knowing, intelligent and voluntary, the inquiry was aborted by the court. The trial court discussed the pending charges and range of allowable punishment but did not explore the dangers of self-representation and terminated the inquiry solely based on Williams' statement that he had heard what the court had said regarding the charges and punishment. The trial court did not allow Williams to speak again following this statement and declared him incapable of waiving his right to counsel. While we can sympathize with the difficulties a trial court may face when engaging in a thorough waiver colloquy with a potentially difficult defendant, on this record we cannot say that the trial court complied with the inquiry mandated by *Watson*.

{¶14} Perhaps more importantly, even if the trial court had fully engaged in a waiver inquiry with Williams, we find the basis for the trial court's determination that Williams was incapable of making a knowing, intelligent and voluntary waiver of his right to counsel to be contrary to law. The trial court explained that its determination

was based on Williams' IQ and knowledge of the law. We find these reasons to be invalid for the purposes of denying a defendant's waiver of counsel.

{¶15} Since the United States Supreme Court's decision in *Faretta*, it has been well established that the Sixth and Fourteenth Amendments include a constitutional right to proceed without counsel when a criminal defendant voluntarily and intelligently elects to do so. The court in *Faretta* further rejected the notion that a defendant's right to represent himself was conditioned upon his technical legal knowledge. *Id*. at 835-836.

{¶16} In 1993, the court revisited the domain of *Faretta* in *Godinez v. Moran*, 509 U.S. 389, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993). In *Godinez*, the court clarified that the standard for pleading guilty or waiving the right to counsel is not higher than the competency standard for standing trial. *Id.* at 391. The court reiterated that a defendant's ability to represent himself has no bearing upon his competence to choose self-representation and held that, "the competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent himself." *Id*. at 400.

{¶17} In 2008, the court again addressed the intersection of mental competence and waiver of counsel in *Indiana v. Edwards*, 554 U.S. 164, 128 S.Ct. 2379, 171 L.Ed.2d 345 (2008). The defendant in *Edwards* suffered from schizophrenia, but had been restored to competency such that he was able to stand trial and wished to represent himself. The court noted that the right of self-representation is not absolute and held:

> [T]he Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to

conduct his own defense at trial is mentally competent to do so. That is to say, the Constitution permits states to insist upon representation by counsel for those competent enough to stand trial under *Dusky*[2] but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves.

{¶18} The state argues that, pursuant to *Edwards*, the trial court acted within its authority to deny Williams' request to represent himself due to the testimony of Dr. Rodio that placed Williams' intelligence in a range of mild mental retardation. There is no dispute that Williams does not suffer from a severe mental illness.[3]

{¶19} The state asks us to read *Edwards* broadly and apply it beyond defendants with severe mental illnesses to a narrow sliver of defendants who are intelligent enough to be competent to stand trial but not intelligent enough to represent themselves. It is unclear what guidelines would apply to such an application of *Edwards*. For instance, Williams' IQ of 56 places him at the low end of mild mental retardation and very close to moderate mental retardation. Are we to adopt a rule that precludes all defendants with IQs in the mild mental retardation range from exercising their constitutional right to represent themselves pro se, including those with IQs more than ten points higher than Williams' score? Are we to select an arbitrary IQ score as the cutoff? Or are we to leave trial courts the discretion to deny a defendant his Sixth Amendment right based

---

[2]*Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, L.Ed.2d 824 (1960).

[3]Mental retardation and severe mental illnesses are separate and distinct concepts under Ohio law. *See, e.g., State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032 (refusing to equate the two for the purposes of the death penalty); Cuyahoga County Court of Common Pleas, General Division, Loc.R. 30.1.

solely upon their perception of a defendant's intelligence? These are all troubling questions.

{¶20} There is no consensus amongst courts as to whether *Edwards* extends beyond defendants who suffer from a severe mental illness. In *U.S. v. Berry*, 565 F.3d 385 (7th Cir.2009), the United States Court of Appeals for the Seventh Circuit held that "severe mental illness" was a condition precedent to the application of *Edwards*. The Seventh Circuit noted that the *Edwards* court couched its decision in terms such as "mental derangement," "gray-area defendant," "borderline-competent criminal defendant," and "severe mental illness." Pursuant to *Berry*, if a defendant does not suffer from a severe mental illness then *Edwards* is inapplicable and the holdings of *Faretta* and *Godinez* apply.[4]

{¶21} In contrast, the court of appeals of Alaska in *Falcone v. Alaska*, 227 P.3d 469 (Ala.App.2010), rejected the holding in *Berry* and held that "severe mental illness" was not a requirement for the application of *Edwards*. In *Falcone*, the defendant was diagnosed with antisocial personality disorder and polysubstance dependence but did not suffer from a mental illness. *Id*. at 471. The trial court refused to allow him to proceed pro se based upon Falcone's filing of bizarre pretrial motions and his reliance on

---

[4]The court in *Berry* also aptly pointed out the no-win situation a trial court is placed in with cases such as this: If the court denies waiver, the defendant can appeal that decision; if the court allows waiver, the defendant can appeal and argue that the trial court improperly allowed him to waive counsel.

incoherent legal theories. The Alaskan court of appeals upheld the trial court's decision based on a broader reading of *Edwards* than that of the *Berry* court. *Falcone* at 474.

**{¶22}** We agree with the reasoning of the Seventh Circuit in *Berry*. The right to represent oneself pro se has long been recognized in this country and is sacrosanct. Although the right is certainly not absolute, it may not be dispensed with easily. A defendant who chooses to proceed pro se is often making an unwise decision. However, consistent with the rights recognized and defined in *Faretta* and *Godinez,* it is not within the province of the state to tell a defendant, intelligent enough to stand trial, that he is not intelligent enough to represent himself. The Supreme Court's recognition of a narrow exception to the general rule for defendants suffering from mental illnesses should not be treated as empowering trial courts to deny defendants their pro se rights under the Sixth Amendment based upon the trial court's evaluation of their intelligence and anticipated skill at presenting their defense.

**{¶23}** Williams' assignment of error is sustained.

**{¶24}** Williams' convictions are vacated and the cause is hereby remanded to the lower court for a new trial.

It is ordered that appellant recover from appellee his costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to

Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, JUDGE

LARRY A. JONES, SR., P.J., CONCURS;
MELODY J. STEWART, J., CONCURS
WITH SEPARATE OPINION


MELODY J. STEWART, J., CONCURRING:

**{¶25}** I agree with the majority that the trial court did not go far enough in its waiver inquiry with Williams. I also agree that Williams's IQ and knowledge of the law cannot be the basis for denying the right to self-represent. However, I write separately to question whether Williams's request to represent himself was properly invoked: that is, whether the request was timely made and whether there is evidence that his request was made for purposes of delay or to manipulate the proceedings.

**{¶26}** In *State v. Halder*, 8th Dist. Cuyahoga No. 87974, 2007-Ohio-5940, we noted that in order for a criminal defendant to properly invoke the right to pro se representation, his request to do so "must be unequivocal and timely; otherwise, the trial court may, in its discretion, deny the request." *Id.* at ¶ 50. In *Halder*, this court found as a matter of law that the defendant's request to self-represent was equivocal and untimely. Halder's request was made four days before trial and after the court refused to appoint a third attorney to represent him. Furthermore, we noted that the trial proceeded

and Halder never renewed his request to self-represent. We determined that, although not mandatory, the fact that Halder never renewed his desire to represent himself was "helpful in evaluating [his] intended use of the request, i.e., was it a sincere desire to proceed pro se or manipulative." *Id*. at ¶ 59.[5]

{¶27} Williams was first appointed counsel in April 2012 and after numerous pretrials, discovery requests and plea discussions, trial was set for September 2012. A couple of days before trial was scheduled to begin, Williams filed, pro se, a Notice of Issue of Incompetence Now Being Raised Prior to Commencement of Trial, and on the date trial was set to start, the docket indicates that trial was being continued at the defendant's request due to defendant's intent to file a notice of alibi. Later that day, the court granted Williams's motion for a competency evaluation and continued the trial.

{¶28} On September 20, 2012, Williams's court-appointed attorney filed a motion to withdraw as counsel citing as reasons, irreconcilable differences and Williams's statement in his competency notice that he is unwilling to work with counsel. The court granted the motion to withdraw and assigned a new lawyer. After continued discovery exchange, plea discussions and pretrials, on October 15, 2012, Williams filed, pro se, a notice of entering a plea of not guilty by reason of insanity. In the notice, he also stated that he refuses to work with his assigned counsel. On the same day, Williams filed a

---

[5]I also note that this court recently decided *State v. Thigpen*, 8th Dist. Cuyahoga No. 99841, 2014-Ohio-207, where the defendant appealed, prior to the commencement of trial, the court's decision to deny self-representation.

waiver of his right to counsel and specifically rejected the possibility of standby counsel.

{¶29} After several continuances, Williams's competency hearing was held on January 4, 2013. At the hearing, Dr. Rodio testified that Williams' IQ would not prevent him from assisting in his defense and would not prevent him from understanding the proceedings. When asked if he was able to offer an opinion on Williams's ability to represent himself, the doctor replied that he could not give an opinion to a reasonable medical certainty about Williams's ability to defend himself. He stated that the ability to do so is one he would not have directly assessed and further commented on the lack of standards to render such an assessment.

{¶30} As the majority notes, the trial court began a colloquy with Williams to ensure that his decision to forego legal counsel was being made knowingly, intelligently, and voluntarily. When the court asked Williams, after explaining the charges against him and the consequences he faced, whether he understood what the court had just explained, Williams replied, "I heard what you said." Obviously irritated by the response, the trial judge admonished Williams and asked him again if he understood what was said to him. Although it is unclear whether Williams chose not to further respond or whether the trial court's admonitions prevented him from responding, it is clear that his initial response indicated that Williams was either unable or unwilling to demonstrate that he was knowingly and intelligently waiving his right to counsel. This exchange, coupled with Williams's repeated dissatisfaction with his assigned counsel, could be construed as attempting to delay or manipulate the proceedings. At bottom, they indicate that his

request was equivocal.

{¶31} For these reasons, I have serious doubts whether Williams properly invoked his right to self-representation.