[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-14365
_____

D.C. Docket No. 1:06-cr-00358-RWS-ECS-2


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ISMAEL ESTRADA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(August 1, 2013)

Before MARTIN and FAY, Circuit Judges, and EDENFIELD,[*] District Judge.

PER CURIAM:

---

[*] Honorable B. Avant Edenfield, United States District Judge for the Southern District of Georgia, sitting by designation.

Defendant-Appellant, Ismael Estrada, appeals his convictions on fourteen counts involving conspiracy to possess with intent to distribute cocaine and marijuana, in violation of 21 U.S.C. §§ 841(b)(1)(A)(ii), (b)(1)(D), and 846; and money laundering, in violation of 18 U.S.C. §§ 1956(h) and 1957.  On appeal, Estrada argues that the district court failed to conduct a thorough inquiry as to whether he validly waived his right to counsel prior to trial.  For the reasons that follow, we affirm.

I.

This case involves the situation in which an uncooperative defendant adamantly rejected his constitutional right to be represented by competent counsel, but also refused to invoke affirmatively his right to self-representation.  Estrada was indicted on fourteen counts, including one count of conspiracy to possess with intent to distribute at least 5 kilograms of cocaine and marijuana, in violation of 21 U.S.C. § 841(a)(1), one count of conspiracy to commit money laundering, in violation of 18 U.S.C § 1956(h); and twelve counts of money laundering involving proceeds from controlled substances, in violation of 18 U.S.C. § 1957.  At his arraignment, Estrada, represented by the office of Bruce Harvey, refused to enter a plea, repeatedly stating "I'm accepting this for value.  I'm accepting the charges."  The court noted that it was entering a not-guilty plea on his behalf and told him to be quiet.  After Estrada protested that he had not pled not guilty, interrupted the

2

court several times, and asserted his rights under the Uniform Commercial Code ("UCC"), court personnel removed him from the courtroom.

Subsequently, Estrada, while still represented by counsel, began filing *pro se* documents. The documents referenced the UCC and described him as a secured party. Estrada also filed a document entitled "Revocation of Power of Attorney," which indicated that he wished to "revoke, cancel, and annul" the authority of his attorney to act on his behalf.

During a pretrial conference, the court noted that Estrada had filed documents that needed to be clarified prior to trial. Estrada asserted that he "was under protest and [did] not consent to what's taking place." The court explained that, because he was represented by counsel, his attorney was responsible for presenting his legal arguments. Estrada responded that he was "firing counsel as of today," and "counsel is fired." The court explained that it would not accept his decision until he had time to confer with his attorney because of the risks involved in proceeding without counsel. Estrada responded that he was unsuccessful in contacting his counsel and had not seen her for 17 months. The court replied that it thought Estrada should speak to counsel before he made a final decision, and cautioned that:

> [T]o choose to proceed and represent yourself may not be the way to deal with that because you are taking [a] *substantial risk*, and you obviously *have a great deal at stake in terms of the consequences* [if] you [are] found guilty of these charges.

3

> I can tell you now [that] I am going to strongly discourage you from choosing to release your counsel. But I will also say to you now that ultimately that will be *your decision because our Constitution and laws give you the right to do that*, but *only after I am convinced that you understand what you are doing and particularly that you understand the consequences which in this case are extremely serious* and particularly when you are represented by very able counsel as you are in this case.

(Emphasis added). Estrada's counsel, Elizabeth Hanson from the office of Bruce Harvey, asserted that she actually had visited him in the past year, including when she was on maternity leave. Estrada then referenced the UCC. The proceedings concluded at that point.

Four days prior to trial, the court verified Estrada's termination of his counsel's representation. The court questioned whether Estrada wanted to represent himself or whether he was seeking new counsel. Rather than answering the court's questions, Estrada responded that he reserved his rights and again mentioned the UCC. The court explained that Estrada's case was a criminal case, not a commercial case. After Estrada continued to reference the UCC, the court again questioned whether he wanted to represent himself. However, Estrada was uncooperative. Estrada responded that he was not doing business with the court and was not under contract with the court.

At that point, the district court excused the government and conducted an *ex parte* inquiry of Estrada and his counsel. The court informed Estrada that its

4

obligation was to ensure that he understood the risks of representing himself.  The court explained that he was a defendant in a criminal case and had been indicted by the grand jury and charged with very serious charges, for which he faced a potential life sentence.  The court informed Estrada that he had one opportunity—a jury trial—to contest the charges and require the government to prove his guilt beyond a reasonable doubt.  If the government carried its burden, he would be convicted and face the possibility of life imprisonment.

Additionally, the court explained that Estrada had a constitutional right to counsel and the right to represent himself.  The court stated that the choice was entirely up to him, but also cautioned Estrada that it is a "tremendous burden to present a case . . . [and] even [lawyers] sometimes struggle . . . ."

The court further advised Estrada of the risks of self-representation.  The court told Estrada that "it's a tremendous risk . . . [to] represent yourself . . . ."  For example, Estrada did not understand criminal trial and courtroom procedure because he had not been trained in the law or attended law school.  The court told Estrada that a lawyer would be knowledgeable about the rules of evidence, including presenting evidence, ensuring the government followed the rules of evidence, making objections, properly questioning witnesses, and preserving the record for appeal.  The court cautioned that Estrada might fail to preserve issues for appeal.

5

Finally, the court stated that Estrada had no basis to assert any rights or claims under the UCC, so he could not mention the UCC during the criminal trial. The court explained to Estrada that a lawyer would be helpful in providing other defenses to him that would pertain to a criminal trial.

Thereafter, the court asked Estrada if he wanted to speak with counsel regarding whether he should represent himself. Estrada did not answer the question, but stated that fraud had been committed. The court repeated the question, but both times Estrada was uncooperative. Therefore, the court stated that it would construe Estrada's answers to indicate that he did not wish to speak with counsel.

The court then continued to ask Estrada whether he intended to represent himself. Instead of responding, Estrada requested the matter to be turned over to homeland security. Estrada further indicated that he was under duress and coercion. The court denied the request and again asked whether he intended to represent himself. Estrada responded that his business with the court was finished. Consequently, the court asked Estrada's counsel, Hanson, to serve as standby counsel at trial, and she agreed to do so.

Four days later, a jury trial commenced. During trial, Estrada gave an opening statement, successfully made numerous objections during the government's case-in-chief, cross-examined witnesses, invoked the rule of

6

sequestration, and conferred with standby counsel Hanson.[1]   Estrada consulted with Hanson extensively throughout his trial, receiving advice on, *inter alia*, cross-examining witnesses, admitting exhibits, and deciding whether to testify on his own behalf.

Following deliberations, the jury found Estrada guilty on all fourteen counts of the indictment.   The court sentenced Estrada to 360 months' (30 years) imprisonment as to count one and 240 months' imprisonment on counts two through fourteen, with the sentences running concurrently.

## II.

A district court's determination of whether a defendant's waiver of his Sixth Amendment right to assistance of counsel is valid is a mixed question of law and fact that we review *de novo*.  *United States v. Kimball*, 291 F.3d 726, 730 (11th Cir. 2002) (citation omitted).  We have noted that "[a] defendant who chooses to proceed *pro se* is not entitled to special treatment on appeal.  If a *pro se* defendant fails to properly preserve an issue for appeal, we will set aside the conviction only

---

[1]  During cross-examination of the government's witnesses, Estrada inadvertently elicited a number of damaging statements.

if the trial court committed plain error." *See United States v. Chaney*, 662 F.2d 1148, 1151-52 n.4 (5th Cir. Unit B 1981).[2]

### III.

Estrada, now represented by counsel, argues that his convictions are invalid because the court did not conduct a thorough inquiry into whether he waived his right to counsel knowingly, voluntarily, and intelligently. We disagree.

Under the Sixth Amendment to the United States Constitution, criminal defendants have both the right to counsel and the right to represent themselves. *Faretta v. California*, 422 U.S. 806, 834 (1975). A defendant can decline his right to counsel, and consequently assert his right to represent himself, by "knowingly and intelligently" waiving the right to counsel. *Id.* at 835. However, when a defendant chooses self-representation, "he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* (citation omitted); *see also United States v. Garey*, 540 F.3d 1253, 1266 (11th Cir. 2008) (en banc) ("In order for a defendant to validly waive his right to counsel, his choice must be knowing, as well as voluntary.").

---

[2] All Fifth Circuit Unit B decisions rendered after October 1, 1981, operate as binding precedent in the Eleventh Circuit. *United States v. Maxwell*, 579 F.3d 1282, 1305 n.6. (11th Cir. 2009) (citing *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981)).

"[T]he 'ideal method' of assuring that a defendant understands the consequences of a waiver is for the trial court to conduct a pretrial hearing." *Kimball*, 291 F.3d at 730. This hearing is commonly known as a "*Faretta* inquiry*," where the court "inform[s] the defendant of the nature of the charges against him, possible punishments, basic trial procedure and the hazards of representing himself." *Id.* (citation omitted). "If the trial record demonstrates that [the defendant's] decision to represent himself was made with an understanding of the risks of self-representation, the knowing, intelligent, and voluntary waiver standard of the Sixth Amendment will be satisfied." *Fitzpatrick v. Wainwright*, 800 F.2d 1057, 1065 (11th Cir. 1986).

In *Fitzpatrick*, we identified several factors to consider in determining whether a defendant has knowingly, voluntarily and intelligently chosen to represent himself:

> 1) the defendant's age, health, and education; 2) the defendant's contact with lawyers prior to trial; 3) the defendant's knowledge of the nature of the charges and possible defenses and penalties; 4) the defendant's understanding of the rules of evidence, procedure and courtroom decorum; 5) the defendant's experience in criminal trials; 6) whether standby counsel was appointed and, if so, the extent to which standby counsel aided in the trial; 7) any mistreatment or coercion of the defendant; and 8) whether the defendant was attempting to manipulate the trial.

*Kimball*, 291 F.3d at 730-31 (citing *United States v. Cash*, 47 F.3d 1083, 1088-89 (11th Cir. 1995); *Fitzpatrick*, 800 F.2d at 1065-67). "All factors need not point in the same direction." *Cash*, 47 F.3d at 1089 (citation omitted).

In addition to an express waiver, a defendant may waive counsel by his conduct, even without any affirmative request to proceed *pro se. Garey*, 540 F.3d at 1265. Since *Faretta*, we have noted that *Faretta* "presupposed a cooperative defendant willing to engage in reciprocal dialogue with the court. The Supreme Court has never confronted a case in which an uncooperative defendant has refused to . . . engage in a colloquy with the court." *Garey*, 540 F.3d at 1263. In *Garey*, we addressed the situation in which an uncooperative defendant rejected counsel, but also refused to affirmatively invoke his right to self-representation. *Id.* at 1257. There, the defendant was represented by appointed counsel, and although he submitted numerous *pro se* filings, he did not expressly request that his counsel be terminated and new counsel appointed due to an alleged conflict of interest until shortly before trial. *Id.* 1259 & n.2. After concluding that no conflict existed, the district court asked Garey several times whether he wanted to continue with the same attorney or represent himself and explained the risks of self-representation. *Id.* at 1259. Instead of responding to the question, Garey reiterated his conflict of interest argument and stated that he was not voluntarily waiving his right to counsel, but did not want his current attorney to represent him. *Id.* at 1259-62.

10

On appeal, we held that if a defendant refuses the services of competent, conflict-free counsel, then he can waive his right to counsel through his uncooperative behavior if he makes the decision with awareness of his options and the potential consequences. *Id.* at 1267. The "best practice" was for a district court to first try to engage the defendant in a *Faretta* discussion, but if he "refuses to provide clear answers to questions regarding his Sixth Amendment rights, it is enough for the court to inform the defendant unambiguously of the penalties he faces if convicted and to provide him with a general sense of the challenges he is likely to confront as a pro se litigant." *Id.* In that situation, a "*Faretta*-like monologue" would be sufficient. *Id.* at 1267-68.

In this case, the district court did not err by allowing Estrada to proceed *pro se* because the record shows that, through his uncooperative conduct and the court's explanation, Estrada waived his right to counsel. Although Estrada did not clearly and unequivocally assert the right of self-representation, the court complied with *Garey* by first attempting to conduct a normal *Faretta* hearing, and subsequently resorting to a "*Faretta*-like monologue" after Estrada repeatedly refused to answer questions about whether he wanted to represent himself. The court explained to Estrada that representing himself was a "substantial risk" and because the potential consequences were serious, it would only accept his decision if convinced that he understood the ramifications. The court further explained that:

11

(a) he only had one opportunity for a trial; (b) he faced a possible life sentence if convicted; (c) his case was a criminal case, not a commercial case; (d) he had a right to decide whether to represent himself; (e) there were many ways a lawyer would be helpful; and (f) he might fail to properly preserve issues of appeal. Accordingly, Estrada's uncooperative behavior, combined with the district court's thorough explanation of the risks of self-representation, constituted a valid waiver. *Garey*, 540 F.3d at 1265.

Nevertheless, Estrada argues that the court's *Faretta*–like monologue did not adequately warn him about the risks of self-representation because the district court asked only "scant questions" and failed to satisfy the eight factors described in *Fitzpatrick v. Wainwright*, 800 F.2d 1057 (11th Cir. 1986). We disagree.

As to the first *Fitzpatrick* factor—the defendant's age, health, and education— Estrada was approximately 47 years old, and although the record does not indicate the extent of his education, it appears that he had enough business savvy to structure complex financial transactions involved in this case. There is also no indication in the record that he suffered from any mental or physical health problems which may have affected his ability to comprehend the proceedings. Therefore, the first *Fitzpatrick* factor supports the district court's decision.

The second *Fitzpatrick* factor—the defendant's contact with lawyers prior to trial—similarly supports the district court's decision. Estrada had been represented

12

by his attorney since his first indictment in 2006 involving the same offenses,[3] five years before the *Faretta* proceeding. Estrada contended that his attorney failed to maintain contact with him, but there was no evidence on that point other than his assertions. On the contrary, his attorney, Hanson, indicated that she had visited Estrada, and as his attorney filed numerous motions on Estrada's behalf. The court specifically noted that his counsel was competent and gave Estrada numerous opportunities to confer with counsel before it decided that he could represent himself. Accordingly, this factor supports the district court's decision.

As to the third *Fitzpatrick* factor—the defendant's knowledge of the nature of the charges, possible defenses, and penalties—Estrada had been facing the same charges for five years at the time of the court's *Faretta* determination, and the court explained that the charged offenses were very serious, his freedom was at risk, and he could potentially be sentenced to life in prison. Moreover, at his arraignment, the magistrate judge confirmed that Estrada had a copy of his second superseding indictment that listed the government's charges against him. And although the court did not explicitly inform Estrada about the available defenses, it explained that an attorney would be knowledgeable about how to assert defenses, which was knowledge that he likely did not have. The court also cautioned that his

---

[3] This appeal arises from Estrada's convictions for the offenses listed in the government's second superseding indictment.

13

current UCC defense was not relevant to the criminal proceedings.  Therefore, this *Fitzpatrick* factor weighs in favor of the district court's decision.

The fourth factor—the defendant's understanding of the rules of evidence, procedure, and courtroom decorum—similarly weighs in favor of the district court's decision.  The court's explanation about the implications of self-representation provided sufficient awareness of courtroom procedure and legal rules.  The court expressly noted that Estrada had no legal training and had not attended law school, so he lacked the knowledge that an attorney could provide.  The court further warned him that a lawyer would know the rules of evidence, including how to get evidence admitted, ensure that the government followed the rules, make objections, properly question witnesses, and preserve issues for appeal.  Additionally, the court warned him that defending an accused at a criminal trial was a "tremendous burden," even for attorneys, so he needed to realize that he faced a "tremendous risk."  This "*Faretta*-like monologue" provided ample notice of how Estrada's lack of legal knowledge could put him at risk if he chose to represent himself at trial.[4]

Furthermore, Estrada showed his understanding of courtroom procedure by submitting *voir dire* questions, presenting opening and closing statements,

---

[4] We note that Estrada's continued reliance on the UCC, even after he was explicitly warned that the UCC had no application in his criminal case, could suggest that he was not enlightened by the court's admonitions.

consulting with standby counsel, making numerous objections during the trial (fourteen of which were sustained), cross-examining witnesses, and invoking the rule of sequestration. Although Estrada inadvertently elicited a number of damaging statements on cross-examination, the relevant issue is not how well he performed as a legal advocate, but whether he made the decision to represent himself with an awareness of the risks. *Kimball*, 291 F.3d at 731. Therefore, the fourth *Fitzpatrick* factor supports the court's decision.

The fifth factor—the defendant's experience in criminal trials—weighs against allowing Estrada to represent himself. Although Estrada was convicted of a drug offense in 1988, he entered a guilty plea and did not have a jury trial. *See, e.g.*, *Kimball*, 291 F.3d at 731 (discussing the defendant's courtroom experience in a felony case). Nevertheless, "[a]ll factors need not point in the same direction." *Cash*, 47 F.3d at 1089.

Regarding the sixth factor—whether standby counsel was appointed and, if so, the extent to which standby counsel aided in the trial—the court appointed Estrada's former attorney, who had been representing him for more than five years, to serve as standby counsel. Estrada consulted with her extensively throughout his trial, receiving advice on, *inter alia*, cross-examining witnesses, admitting exhibits, and deciding whether to testify on his own behalf. The district court also expressly

15

noted that his counsel was exceedingly competent.  Thus, the sixth *Fitzpatrick* factor weighs in favor of the district court's decision.

The seventh factor—any mistreatment or coercion—also supports the district court's decision.  Although Estrada asserted that he was under duress and coercion, these statements, considered in context, appear to reflect his general dissatisfaction with the proceedings rather than any specific harassment or threats, and there was no evidence in the record of any such conduct.  The court also repeatedly reminded Estrada that he had a right to choose between appointed counsel or self-representation.  Therefore, this factor supports the court's decision.

Finally, as to the eighth factor—whether the defendant was attempting to manipulate the trial—the district court could have concluded that Estrada was attempting to obstruct or delay the proceedings by: (a) insisting on representing himself only days prior to trial; (b) continually referencing the UCC; (c) filing numerous *pro se* documents while represented by counsel; (d) evading the court's questions; and (e) stating that his business with the court was finished.

In conclusion, Estrada's waiver of his right to counsel and decision to proceed *pro se* was made knowingly, intelligently, and voluntarily.  Estrada expressly stated that he wanted to terminate his attorneys and "revoke" their authorization to act on his behalf.  His uncooperative behavior, combined with the district court's thorough explanation of the risks of self-representation, created a

valid waiver.  As evidenced by the *Fitzpatrick* factors, Estrada waived his right to assistance of counsel knowingly, voluntarily, and intelligently.

Accordingly, this Court affirms.

**AFFIRMED.**