[Cite as *State v. Godley*, 2018-Ohio-4253.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,                CASE NO. 5-17-29

     v.

DARIUS L. GODLEY,               O P I N I O N

     DEFENDANT-APPELLANT.

**Appeal from Hancock County Common Pleas Court**
**Trial Court No. 2016 CR 79**

**Judgment Affirmed**

**Date of Decision: October 22, 2018**

APPEARANCES:

    *Deborah K. Rump and Michael H. Stahl* **for Appellant**

    *Phillip A. Riegle* **for Appellee**

**PRESTON, J.**

{¶1} Defendant-appellant, Darius L. Godley ("Godley"), appeals the September 21, 2017 judgment entry of sentence of the Hancock County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} On April 5, 2016, the Hancock County Grand Jury indicted Godley on eight counts, including: Counts One through Three of trafficking in heroin in violation of R.C. 2925.03(A), fifth-degree felonies; Count Four of trafficking in cocaine in violation of R.C. 2925.03(A), a fifth-degree felony; Count Five of possession of cocaine in violation of R.C. 2925.11(A), a first-degree felony; Count Six of possession of heroin in violation of R.C. 2925.11(A), a second-degree felony; Count Seven of aggravated possession of acetaminophen and oxycodone hydrochloride in violation of R.C. 2925.11(A), a fifth-degree felony; and Count Eight of having weapons while under disability in violation of R.C. 2923.13(A)(3), a third-degree felony. (Doc. No. 1). The indictment includes forfeiture specifications under R.C. 2941.1417(A) as to Counts One through Seven. (*Id.*). On April 12, 2016, Godley appeared for arraignment and entered pleas of not guilty. (Doc. No. 9).

{¶3} On January 17, 2017, Godley filed a motion requesting that the trial court permit him to represent himself. (Doc. No. 79). On January 27, 2017, the trial court granted Godley's motion after conducting a colloquy with Godley to

ensure that he was knowingly, intelligently, and voluntarily waiving his right to counsel. (*See* Jan. 27, 2017 Tr. at 28, 41). (*See also* Doc. No. 86). On February 2, 2017, the trial court formally discharged Godley's court-appointed counsel. (Doc. No. 86). The trial court also appointed standby counsel. (Doc. Nos. 83, 86). Godley represented himself until August 4, 2017. (*See, e.g.*, Mar. 10, 2017 Tr. at 2); (May 5, 2017 Tr. at 2); (May 31, 2017 Tr. at 3).

{¶4} On August 4, 2017, Godley reinvoked his right to counsel and requested that the trial court appoint his standby counsel to represent him; the trial court granted Godley's request and appointed his standby counsel to represent him. (Doc. No. 288). (*See* Aug. 4, 2017 Tr. at 58-60). That same day, the State filed a motion to amend the indictment and a motion to dismiss Count One and the specifications under Count One. (*See* Doc. Nos. 283, 284, 286). On August 4, 2017, the trial court granted the motion to dismiss Count One of the indictment and its accompanying forfeiture specifications and dismissed the count and specifications. (Doc. No. 286). Following the dismissal of Count One of the indictment, the remaining counts— Counts Two through Eight—were renumbered as Counts One through Seven, respectively. (*See* Aug. 4, 2017 Tr. at 52-53). (*See also* Doc. Nos. 336, 337, 338, 339, 340, 341, 342). On August 9, 2017, the trial court granted the State's motion to amend the indictment. (Doc. No. 291).

**{¶5}** The case proceeded to a jury trial on August 14-18, 2017 during which Godley was represented by counsel. (*See* Doc. No. 346). (*See also* Aug. 14-18, 2017 Tr., Vol. I, at 1-6). On August 18, 2017, the jury found Godley guilty of Counts One through Six but found him not guilty of Count Seven. (Doc. Nos. 332, 336, 337, 338, 339, 340, 341, 342). Having earlier waived his right to a jury trial regarding the specifications contained in the indictment, the trial court found Godley guilty of the specifications and found that the currency and property identified in the specifications are subject to forfeiture. (Doc. Nos. 327, 333). The trial court filed its judgment entry of conviction on August 18, 2017. (Doc. No. 332).

**{¶6}** On September 19, 2017, the trial court sentenced Godley to nine months in prison on Count One, nine months in prison on Count Two, and nine months in prison on Count Six, and ordered that those sentences be served concurrently. (Doc. No. 356). The trial court also sentenced Godley to nine months in prison on Count Three, 8 years in prison on Count Four, and 6 years in prison on Count Five. (*Id.*). The trial court ordered that Godley serve his sentences for Counts Three, Four, and Five consecutively to each other and consecutively to his concurrent nine-month prison sentence for Counts One, Two, and Six, resulting in an aggregate sentence of 15 years and six months in prison. (*Id.*). Finally, the trial court ordered forfeited the currency and property identified in the specifications. (*Id.*). The trial court filed its judgment entry of sentence on September 21, 2017. (*Id.*).

**{¶7}** On October 12, 2017, Godley filed a notice of appeal. (Doc. No. 383).

He raises one assignment of error.

### Assignment of Error

**The trial court erred by allowing Appellant to represent himself. The trial court first failed to undertake the needed colloquy to insure Appellant fully understood the rights he was waiving and the potential perils. Appellant was acting out of frustration and repeatedly changed his mind regarding self-representation. He also lacked the competency needed to understand basic rules of criminal procedure or substantive law. His waiver was not given knowingly, voluntarily or intelligently and should have been denied.[1]**

**{¶8}** In his assignment of error, Godley argues that the trial court erred by permitting him to waive his right to counsel and exercise his right of self-representation. Godley advances three distinct arguments in support of his assignment of error: (1) the trial court should have rejected his request to represent himself because he lacked the competency required to engage in self-representation; (2) the trial court erred by allowing him to represent himself because he did not clearly and unequivocally invoke his right to self-representation; and (3) even if he was competent to represent himself and did unequivocally invoke his right of self-

---

[1] Godley phrases his single assignment of error differently at different places in his appellate brief. At one point, he offers this alternative formulation of his assignment of error: "The trial court erred by allowing appellant to represent himself at trial. The lower court failed to properly evaluate whether he possessed the competency to undertake self-representation or his reasons for doing so." (Appellant's Brief at 24). We give the wording set forth in the body of this opinion priority because it better expresses the substance of Godley's entire argument.

representation, the trial court erred by allowing him to represent himself because he did not knowingly, intelligently, and voluntarily waive his right to counsel.

{¶9} We review de novo whether a defendant knowingly, voluntarily, and intelligently waived his right to counsel. *State v. Yeager*, 9th Dist. Summit Nos. 28604 and 28617, 2018-Ohio-574, ¶ 7, quoting *State v. Ott*, 9th Dist. Summit No. 27953, 2017-Ohio-521, ¶ 5; *Lakewood v. Lane*, 8th Dist. Cuyahoga No. 104534, 2017-Ohio-1039, ¶ 10, quoting *Columbus v. Abrahamson*, 10th Dist. Franklin No. 13AP-1077, 2014-Ohio-3930, ¶ 6; *State v. Alexander*, 4th Dist. Ross No. 15CA3492, 2016-Ohio-5015, ¶ 4, citing *State v. Mootispaw*, 4th Dist. Highland No. 09CA33, 2010-Ohio-4772, ¶ 21. *See State v. Griffin*, 10th Dist. Franklin No. 10AP-902, 2011-Ohio-4250, ¶ 26 (noting that "[i]n the leading cases on the issue of waiver of the right to counsel, the Supreme Court of Ohio appears to have undertaken a de novo review without expressly reciting this standard of review"). "De novo review is independent, without deference to the lower court's decision." *State v. Hudson*, 3d Dist. Marion No. 9-12-38, 2013-Ohio-647, ¶ 27, citing *Ohio Bell Tel. Co. v. Pub. Util. Comm. of Ohio*, 64 Ohio St.3d 145, 147 (1992).

{¶10} "'The Sixth Amendment to the United States Constitution provides that an accused shall have the right "to have the Assistance of Counsel for his defense."'" *State v. Logan*, 3d Dist. Allen No. 1-16-28, 2017-Ohio-8932, ¶ 34, quoting *State v. Owen*s, 3d Dist. Allen No. 1-07-66, 2008-Ohio-4161, ¶ 9, quoting

the Sixth Amendment to the United States Constitution. However, "the United States Supreme Court has also recognized that the Sixth Amendment right to the assistance of counsel implicitly embodies a 'correlative right to dispense with a lawyer's help.'" *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, ¶ 23, quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236 (1942). "While a defendant has a right to counsel, the defendant may also waive that right when the waiver is voluntary, knowing, and intelligent." *State v. Petaway*, 3d Dist. Logan No. 8-05-11, 2006-Ohio-2941, ¶ 8, citing *State v. Gibson*, 45 Ohio St.2d 366 (1976), paragraph one of the syllabus, citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525 (1975).

{¶11} "In order to establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right." *Gibson* at paragraph two of the syllabus.

> [F]or the defendant's waiver of counsel to be valid "'such waiver must be made with an apprehension of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.'"

*Owens* at ¶ 10, quoting *Gibson* at 377, quoting *Von Moltke v. Gillies*, 332 U.S. 708, 724, 68 S.Ct. 316 (1948). However,

> the United States Supreme Court "ha[s] not * * * prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel. The information a defendant must possess in order to make an intelligent election * * * will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding."

*State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, ¶ 101, quoting *Iowa v. Tovar*, 541 U.S. 77, 88, 124 S.Ct. 1379 (2004). Stated differently, "the sufficiency of the trial court's inquiry will depend on the totality of the circumstances * * *." *State v. Edmonds*, 12th Dist. Warren No. CA2014-03-045, 2015-Ohio-2733, ¶ 26, citing *Akron v. Ragle*, 9th Dist. Summit No. 22137, 2005-Ohio-590, ¶ 11-12. *See Alexander* at ¶ 4 ("[A]ppellate courts should * * * independently examine the record to determine whether the totality of circumstances demonstrates a knowing, intelligent, and voluntary waiver of the defendant's right to counsel."), citing *Mootispaw* at ¶ 21.

{¶12} In addition, "Crim.R. 44(A) provides that a criminal defendant charged with a serious offense is entitled to counsel 'unless the defendant, after

being fully advised of his right to assigned counsel, knowingly, intelligently, and voluntarily waives his right to counsel.'" *State v. Schleiger*, 141 Ohio St.3d 67, 2014-Ohio-3970, ¶ 20, quoting Crim.R. 44(A). Further, "Crim.R. 44(C) provides that '[w]aiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Crim.R. 22'" and that "in serious offense cases the waiver shall be in writing." *Id.*, quoting Crim.R. 44(C). Only substantial compliance with Crim.R. 44(A) is required. *See id.*, quoting *Martin* at ¶ 39.

{¶13} Although a defendant's waiver of his right to counsel and decision to invoke his right of self-representation are afforded tremendous respect and deference, the right of self-representation is not absolute, and it is subject to some limitation on its invocation and exercise. *See State v. Buchanan*, 8th Dist. Cuyahoga No. 104500, 2017-Ohio-1361, ¶ 12, citing *Indiana v. Edwards*, 554 U.S. 164, 128 S.Ct. 2379 (2008). *See also United States v. Frazier-El*, 204 F.3d 553, 559 (4th Cir.2000) ("At bottom, the * * * right to self-representation is not absolute, and 'the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer.'"), quoting *Martinez v. Court of Appeal of California*, 528 U.S. 152, 162, 120 S.Ct. 684 (2000). First, "'[t]he assertion of the right to self-representation must be clear and unequivocal.'" *State v. Kramer*, 3d Dist. Defiance No. 4-15-14, 2016-Ohio-2984, ¶ 6, quoting *State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, ¶ 72, citing *State v. Dean*, 127

Ohio St.3d 140, 2010-Ohio-5070, ¶ 68 and *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, ¶ 38. Requiring a defendant to clearly and unequivocally invoke the right to self-representation is "'"necessary to protect * * * against an inadvertent waiver of the right to counsel by a defendant's occasional musings," and it also "prevents a defendant from taking advantage of and manipulating the mutual exclusivity of the rights to counsel and self-representation."'" *State v. Halder*, 8th Dist. Cuyahoga No. 87974, 2007-Ohio-5940, ¶ 51, quoting *United States v. Bush*, 404 F.3d 263, 271 (4th Cir.2005), quoting *Frazier-El* at 558-559. "'[C]ourts have held that a request for self-representation is not unequivocal if it is a "'momentary caprice or the result of thinking out loud,'" * * * or the result of frustration * * *.'" *Kramer* at ¶ 6, quoting *Neyland* at ¶ 73, quoting *Jackson v. Ylst*, 921 F.2d 882, 888 (9th Cir.1990), quoting *Adams v. Carroll*, 875 F.2d 1441, 1445 (9th Cir.1989) and citing *Reese v. Nix*, 942 F.2d 1276, 1281 (8th Cir.1991). "Nor is a request unequivocal if it is 'an "emotional response."'" *Id.*, quoting *State v. Steele*, 155 Ohio App.3d 659, 2003-Ohio-7103, ¶ 13 (1st Dist.), quoting *Lacy v. Lewis*, 123 F.Supp.2d 533, 548 (C.D.Cal.2000).

{¶14} Second, "'[t]he defendant must also assert the right [to self-representation] in a timely fashion.'" *Id.* at ¶ 7, quoting *Steele* at ¶ 14. "'A trial court may deny a defendant's request for self-representation if it is untimely made.'" *Id.*, quoting *Neyland* at ¶ 76, citing *Cassano* at ¶ 40, *United States v. Young*, 287

F.3d 1352, 1354 (11th Cir.2002), *Wood v. Quarterman*, 491 F.3d 196, 202 (5th Cir.2007) and *United States v. Smith*, 413 F.3d 1253, 1281 (10th Cir.2005).

**{¶15}** Finally, trial courts may constitutionally deny a defendant his right to self-representation when there are lingering doubts concerning the defendant's competency to represent himself. The United States Supreme Court has stated that "the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial * * * but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." *Edwards* at 178. However, a trial court's ability to insist on representation by counsel due to concerns about a defendant's competency requires that those concerns arise from a "severe mental illness" suffered by the defendant. *State v. Williams*, 8th Dist. Cuyahoga No. 99859, 2014-Ohio-1057, ¶ 22; *United States v. Berry*, 565 F.3d 385, 391 (7th Cir.2009) (noting that the Supreme Court in *Edwards* "cabined its holding with phrases like 'mental derangement,' * * * 'gray-area defendant,' * * * 'borderline-competent criminal defendant,' * * * and, of course, 'severe mental illness'"). Furthermore, even when a trial court doubts that a defendant is competent to represent himself because of a severe mental illness, the Supreme Court's decision in *Edwards* does not *require* the trial court to deny the defendant his constitutional right to self-representation. *See State v. McQueen*, 10th Dist. Franklin No. 09AP-195, 2009-Ohio-6272, ¶ 19; *Griffin*, 2011-Ohio-4250, at ¶

20-21; *United States v. Bernard*, 708 F.3d 583, 590 (4th Cir.2013). Rather, a trial court may constitutionally permit an arguably incompetent defendant to represent himself so long as the trial court is otherwise satisfied that the defendant knowingly, voluntarily, and intelligently waived counsel and elected self-representation. *See Godinez v. Moran*, 509 U.S. 389, 399-402, 113 S.Ct. 2680 (1993). *See also id.* at 399 ("[T]he competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself.") (Emphasis sic.).

{¶16} Godley first evinced a desire to represent himself at a November 7, 2016 pretrial conference. (*See* Nov. 7, 2016 Tr. at 4). Owing to his apparent dissatisfaction with the performance of his court-appointed counsel, Godley stated, "as of right now, I would rather pro se [sic]. I would rather represent myself in this matter because I know the timeline and everything on this trial." (*Id.* at 5). When asked directly whether he "wish[ed] to waive [his] constitutional right to have a lawyer represent [him] and represent [himself]," Godley responded, "Yes, sir." (*Id.* at 8). However, later during the conference, Godley indicated that he intended to retain private counsel in lieu of his court-appointed attorney. (*Id.* at 20-22). The trial court then advised Godley of the three basic choices he had for legal representation in his case:

Right now, you have a lawyer; only your lawyer can file motions.
When * * * that lawyer asks for leave to withdraw, and the motion is
going to be granted, then the question is are you going to retain a
lawyer, you want me to appoint a lawyer, are you going to represent
yourself. Those are the three possibilities.

(*Id.* at 21). The trial court further informed Godley that "if [he did not] retain a lawyer, [the trial court would] appoint one of [three recommended attorneys] * * * to come down here and represent [him] either as [his] lawyer, or if [he] decide[d] [he] want[ed] to represent [him]self, as [his] stand-by counsel" and warned him that "[he] would be foolish to try to represent [himself] when [he had] competent counsel available." (*Id.* at 27). Godley responded, "All right" to both admonitions. (*Id.*). Based on Godley's statements about either retaining private counsel or moving forward pro se, Godley's court-appointed counsel was granted leave to withdraw from her representation of Godley. (*See* Doc. No. 56). Ultimately, a determination on Godley's request for self-representation was continued until his court-appointed counsel could formally withdraw and until it was clear whether Godley would retain private counsel or accept alternative court-appointed counsel. (*See* Nov. 7, 2016 Tr. at 12, 27).

{¶17} At the next pretrial conference on November 18, 2016, Godley informed the trial court that "[he] should have an attorney within the next week or

so" but that as "of right [then], [he was] representing [himself] * * *." (Nov. 18, 2016 Tr. at 5). However, the trial court rebuked Godley by noting that, pending resolution of his court-appointed counsel's motion to withdraw, he was represented by counsel. (*Id.* at 5-6). Although Godley stated that he was appearing pro se at that conference, he also insisted that he was in the process of retaining private counsel. (*Id.* at 3-5). Resolution of the issue of Godley's legal representation was again continued until it was clear whether Godley could retain private counsel. (*See id.* at 20).

{¶18} At a December 2, 2016 pretrial conference, the trial court granted Godley's court-appointed counsel's motion to withdraw. (*See* Doc. No. 69). Godley also informed the trial court that he would not hire private counsel to represent him and asked that counsel be appointed to represent him. (*Id.*). The trial court granted Godley's request and appointed new counsel to represent him. (Doc. No. 63).

{¶19} Godley next appeared before the trial court with his new court-appointed counsel at a pretrial conference on December 21, 2016. (Dec. 21, 2016 Tr. at 3). Almost immediately, Godley strenuously objected to being represented by his new court-appointed counsel. (*See id.* at 3-4). Godley said that he and his court-appointed counsel "ha[d] a conflict" and that he "d[id] not like" his court-appointed counsel. (*Id.* at 3-4). The trial court informed Godley that he was

"entitled to an appointed counsel, but * * * not entitled to pick [his] counsel"; Godley acknowledged that he understood that he could not have court-appointed counsel of his own choosing. (*Id.* at 4). Godley exclaimed that his new court-appointed counsel "[could not] represent" him and that he was representing himself. (*Id.* at 7). Throughout the conference, Godley continued to object to court-appointed legal representation, interrupted the trial court, and hurled profanities at both his court-appointed counsel and the trial court until he was removed from the courtroom. (*Id.* at 8). At the close of this conference, Godley was still represented by his new court-appointed counsel. (*See id.* at 10-11).

{¶20} At the start of the next pretrial conference on January 27, 2017, Godley's new court-appointed counsel informed the trial court that Godley wished to represent himself. (Jan. 27, 2017 Tr. at 3). The trial court then asked Godley whether he wanted to represent himself:

> [Trial Court]:  So you want to represent yourself, Mr. Godley, is
>                 that what you're telling me, sir?
>
> [Godley]:       Yes, I do.

(*Id.* at 5). The trial court then attempted to conduct a colloquy with Godley regarding his decision to represent himself. (*Id.*). However, as soon as the trial court began to address Godley, Godley interrupted the trial court and challenged the

authority and jurisdiction of the trial court under a legal theory of "sovereign citizenship."[2]

**{¶21}** Despite Godley's obstinacy, the trial court continued addressing Godley. The trial court asked whether Godley understood that by "representing [himself], [he was] giving up [his] constitutional right to have an attorney represent [him] in [his] case." (*Id.* at 7). Godley did not respond in either the affirmative or the negative; instead, Godley continued to object to "any further statements here today" on the basis of his "sovereign immunity" and the fact that the State was "trying to persecute [him] as a corporation." (*Id.* at 7-8). Nevertheless, the trial court persisted in advising Godley about some of the dangers of self-representation:

> I want you to understand if you represent yourself, that you have to
> follow the same rules of evidence as everybody else; that if you
> represent yourself, you'll have to function as your own lawyer, I can't
> help you. You will be held to the same rules of evidence as the
> prosecutor. And, you know, if you represent yourself, you pretty
> much give up your right to claim later that you had ineffective

---

[2] Sovereign citizen "theories involve the alleged corporate status of Ohio and the United States; the relationship between the yellow fringe on the United States flag and admiralty jurisdiction; and the effect of capitalizing the letters of [their] name[s]. [So-called sovereign citizens] ultimately maintain[] that [they] do[] not have a contract with either Ohio or the United States and, therefore, do[] not have to follow government laws." *DuBose v. Kasich*, S.D.Ohio No. 2:11-CV-00071, 2013 WL 164506, *3 (Jan. 15, 2013). Federal and state courts alike have routinely and uniformly rejected claims based on various theories of sovereign citizenship. *See id.* (collecting cases); *Shaker Heights v. El-Bey*, 8th Dist. Cuyahoga No. 104236, 2017-Ohio-929, ¶ 6-7 (collecting cases).

assistance of counsel on appeal. These are some of the things you give up when you represent yourself.

(*Id.* at 8). Godley did not respond to this warning in any manner. (*See id.*).

**{¶22}** Next, the trial court asked whether Godley "kn[ew] what [he was] charged with." (*Id.* at 8-9). In response, Godley answered, "Yes." (*Id.* at 9). The trial court then informed Godley in detail about the charges he was facing and the possible maximum penalties. When the trial court sought to reconfirm whether he understood the nature and extent of the charges against him, Godley reassumed his uncooperative posture by asserting that "all [he] underst[ood]" was that the State was a corporation. (*Id.* at 9-10). The trial court then said:

> [L]et's just assume for the minute that I deny your request here to dismiss the case because I don't have the authority to rule on it, and the prosecutor doesn't have the authority. That means that you're going to have to face a jury of 12 people over there, and they're going to make a decision, the prosecutor is going to present evidence that you had dope in your house, the prosecutor is going to present evidence that you had a weapon, * * * [and that] you had a disability, and when that's all over, if the jury says you're guilty, you can go to prison for a long time * * *.
>
> * * *

-17-

Do you understand that?

(*Id.* at 10-11).   During the foregoing warning, Godley twice interrupted the trial court, and he did not acknowledge the trial court's warning or respond to its content. The trial court also advised Godley that he was presumed innocent of the charges in the indictment.   Following a brief discussion initiated by Godley relating to the revocation of his bond, the trial court continued:

> You absolutely are innocent until proven guilty, but in order to prove you guilty, there has to be a trial.  And * * * you're going to represent yourself at that trial, but * * * if you do, you're making a big mistake because you don't have anywhere near the knowledge or experience that [court-appointed counsel] does.
>
> * * *
>
> But if you have a lawyer to represent you, a lawyer can go out and interview witnesses, a lawyer can do legal research, they can do all of that.
>
> * * *
>
> So I'm advising you that in my opinion, a trained lawyer like [court-appointed counsel], will defend you far better than you can defend yourself.  There's an old saying that a man who is his own lawyer has a fool for a client.  I can't emphasize enough that it's my opinion to

you that you should let [court-appointed counsel] represent you and

present your arguments. You've got a whole yellow pad full of

arguments you want presented. He can package * * * these up * * *

and present them to me.

* * *

So you understand that you want to represent yourself, you can, but

there's a lot of things that you can't do that a lawyer can, and there's

also when you have a lawyer represent you * * * he will help you and

assist you when the case is before the jury to make sure that your case

is presented * * * according to the rules of evidence.

(*Id.* at 12-17). Finally, the trial court advised Godley that he could "change [his] mind at any time" and opt for representation by court-appointed counsel. (*Id.* at 18). (*See id.* at 28-29). However, Godley repeatedly interrupted the trial court throughout the course of its admonition, impugned the competence of his new court-appointed counsel, suggested an improper relationship between the trial court and his new court-appointed counsel, and continued advancing his theory of sovereign citizenship. As with the trial court's prior statements, Godley did not confirm or deny that he understood the trial court's warnings.

{¶23} Before presenting Godley with a waiver-of-counsel form, the trial court appointed Godley's new court-appointed counsel to serve as his standby

counsel. (*Id.* at 18). However, Godley objected to his new court-appointed counsel serving as standby counsel. (*Id.* at 18, 23). As a result, the trial court appointed a different attorney to serve as Godley's standby counsel. (*Id.* at 18, 23). Nevertheless, Godley was still unsatisfied and remarked: "I don't want [standby counsel]. Listen, I want to represent myself. * * * I got to represent myself." (*Id.* at 23). The trial court then explained at length the role of standby counsel as well as the fact that Godley would ultimately be responsible for conducting his own defense. (*Id.* at 25, 27-28).

{¶24} Following the appointment of standby counsel, the trial court presented Godley with a waiver-of-counsel form. Godley stated that he would not "sign anything until [the trial court] sa[id] on record that [his new court-appointed counsel] will not be here * * *." (*Id.* at 20). He reiterated that "[he would] represent [him]self before [he] allow[ed]" his new court-appointed counsel to represent him. (*Id.* at 22). Godley also said:

> I'm filing certain motions that I'm coming up to file them also
> regarding these – and I have to file them myself. I can't do it with
> counsel. Like I say, I'm * * * a sovereign * * * human being.
> * * *
> And I'm pleading certain pleas that * * * I have to do * * * myself, I
> can't do it with counsel * * *.

(*Id.* at 24).

**{¶25}** Eventually, Godley acknowledged that he read the waiver-of-counsel form, understood it, and signed it. (*Id.* at 28). The waiver-of-counsel form provides as follows:

> I understand that I have the right to be represented by counsel, and that if I cannot afford an attorney one will be provided without cost to me. I also understand the nature of the charges against me, the range of allowable sentences for those charges, possible defenses to those charges, and any circumstances in mitigation of those charges. I have been advised * * * that it is not in my best interest to waive my right to appointed counsel and represent myself at trial. Having been fully advised of my constitutional right to appointed counsel, I waive or give up that right and choose to represent myself. * * * I also understand that I must follow Ohio rules of criminal procedure and evidence just as if I were a licensed attorney.

(Doc. No. 84).

**{¶26}** Thereafter, the trial court found that Godley knowingly, voluntarily, and intelligently waived his right to counsel and accepted Godley's waiver of his right to counsel. (Jan. 27, 2017 Tr. at 41, 43). Godley then reiterated, once again, that he "[did] not want nobody to represent [him]" and that he would "represent

[himself] first." (*Id.* at 41). At the close of the pretrial conference, the trial court stated: "So you are now your own lawyer. As we sit here today, you are your own lawyer." (*Id.* at 43). Godley responded: "Yeah." (*Id.*).

{¶27} Next, at a hearing on March 10, 2017, the trial court raised the issue of self-representation and asked Godley whether he was still intent on representing himself. In response, Godley confirmed that he was representing himself as a "sovereign citizen." (Mar. 10, 2017 Tr. at 6-7). Godley remarked: "Your Honor, as a sovereign citizen, I have to represent myself." (*Id.* at 27). Godley further stated that "if [he] decide[d] for counsel * * * [he would] let the courts know but as of right [then], [he was] fine with representing [himself]." (*Id.*). He acknowledged that he understood that he could opt for representation by his standby counsel at any time by "fir[ing] [himself]." (*Id.*). Prior to and during the hearing, Godley filed motions for independent testing, motions to compel discovery, motions to dismiss, motions to sever for separate trials, motions to suppress evidence, and a request for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674 (1978). (*Id.* at 9, 46, 73, 89, 97, 105-107, 112, 129-134). At the close of the hearing, the trial court commended Godley's decorum in the courtroom and commented that, as opposed to the December 21, 2016 pretrial conference during which he was removed from the courtroom, he comported himself as an "absolute gentleman." (*Id.* at 114).

{¶28} At two hearings in May 2017, the trial court revisited Godley's decision to represent himself. (*See* May 5, 2017 Tr. at 285-286); (May 31, 2017 Tr. at 107). On both occasions, Godley continued to represent himself despite the trial court's suggestion that he reconsider and proceed with court-appointed counsel. (*See id.*); (*Id.*).

{¶29} At the final pretrial conference on August 4, 2017, Godley reinvoked his right to counsel. Although Godley represented himself throughout the early portions of the conference, he eventually stated that he wanted the benefit of representation by counsel:

[Godley]:        Your Honor, I'd like to * * * fire myself.

[Trial Court]:   You'd like to do what?

[Godley]:        Fire myself.

* * *

[Trial Court]:   Do you want [standby counsel] to represent you?

[Godley]:        I'm going [to] have to, yes.

[Trial Court]:   So you no longer wish to represent yourself?

[Godley]:        No, sir.

* * *

[Trial Court]:   And you wish to waive your constitutional right to
                 represent yourself and avail yourself of your

constitutional right to have appointed counsel, is that

correct?

[Godley]:     Yes, sir.

(*Id.* at 58-60).  Thereafter, Godley was represented by counsel during the remainder of the pretrial conference, and he was represented by counsel at trial and at his sentencing hearing.

{¶30} In his first argument, Godley contends that the trial court erred by allowing him to waive his right to counsel because he did not possess the mental competence needed to represent himself.  In support of his argument, Godley claims that, among other things, he "lacked even a basic understanding of procedure or law," that he filed "motions that were confusing and duplicative," that he "rambled without purpose or relevance," that he "had an inability to control himself," that he was "extremely confused [and] emotional," and that he "regularly struggled to provide straight answers to the trial court."  (Appellant's Brief at 25-28).  Godley argues that, in light of these factors, the trial court should have rejected his request to exercise his right of self-representation pursuant to *Edwards*.  (*Id.*).

{¶31} Godley's argument is without merit.  First, Godley's case is easily distinguishable from *Edwards*.  In *Edwards*, the defendant suffered from a severe mental illness—schizophrenia.  554 U.S. at 167-168.  Before he asked to represent himself, Edwards had twice been found incompetent to stand trial because "serious

thinking difficulties and delusions" rendered him incapable of cooperating with and assisting his attorneys in his defense. *Id.* In contrast, there is no evidence in this case suggesting that Godley suffered from a serious mental illness either at the time he elected to represent himself or at any point during the course of his self-representation. *See Griffin*, 2011-Ohio-4250, at ¶ 20. Neither Godley's competence to stand trial nor his competence to represent himself were questioned or even mentioned during the periods relevant to his self-representation, and he does not now argue that he suffered from an acute mental illness that significantly compromised his ability to represent himself. *Id.* at ¶ 20, 23. Moreover, Godley's unconventional beliefs about his legal status as a "sovereign citizen" and his behaviors motivated by these beliefs do not indicate that Godley suffered from a severe mental illness or that he was otherwise mentally incompetent to represent himself. *See State v. Tucker*, 9th Dist. Lorain No. 13CA010339, 2016-Ohio-1353, ¶ 8.

**{¶32}** Furthermore, even if Godley's competence to represent himself had been in doubt, *Edwards* does not stand for the proposition that a trial court *must* deny a defendant's request to engage in self-representation whenever the trial court suspects that the defendant may be mentally incompetent to represent himself. *Griffin* at ¶ 20; *McQueen*, 2009-Ohio-6272, at ¶ 19. Rather, *Edwards* provides that "'the Constitution *permits* [s]tates to insist upon representation by counsel' for

certain individuals who are not competent to represent themselves, not that it *requires* states to do so." (Emphasis sic.) *Griffin* at ¶ 20, quoting *Edwards* at 178. Godley does not cite any authority that has transformed trial courts' discretionary power to insist that borderline-competent defendants proceed with counsel into an affirmative duty to deny such defendants their right of self-representation.

**{¶33}** Finally, as the United States Supreme Court made clear in *Godinez*, the competence a defendant must possess in order to waive his right to counsel and represent himself "is the competence to *waive the right*, not the competence to represent himself." (Emphasis sic.) 509 U.S. at 399. A "defendant's 'technical legal knowledge' is 'not relevant' to the determination whether he is competent to waive his right to counsel," and his "ability to represent himself has no bearing upon his competence to *choose* self-representation." (Emphasis sic.) *Id.* at 400, quoting *Faretta*, 422 U.S. at 836. A defendant's knowing, intelligent, and voluntary waiver of his right to counsel must be respected even if his defense is ultimately conducted to his own detriment. *Id.*, quoting *Faretta* at 834. Here, Godley's competency argument focuses on the fact that he was unable to provide himself with satisfactory, professionally competent legal representation; it does not touch upon whether he lacked the mental capacity necessary to freely choose such inept representation. As a result, his argument does not even implicate the "competency" at the heart of *Edwards* and we thus reject his competency argument.

{¶34} In his second argument, Godley contends that the trial court erroneously permitted him to represent himself because he did not clearly and unequivocally invoke his right to self-representation. According to Godley, because his request to represent himself was "based upon frustration with his appointed counsel" and because he "kept changing his mind and only invoked self-representation when he was upset with counsel," he did not clearly and unequivocally invoke his right to self-representation. (Appellant's Brief at 28-29).

{¶35} Godley clearly and unequivocally invoked his right to self-representation, and his arguments to the contrary are unpersuasive. Admittedly, at earlier pretrial conferences and hearings, Godley repeatedly changed his mind about representing himself. For example, Godley first indicated a desire to represent himself at a pretrial conference held on November 7, 2016. (*See* Nov. 7, 2016 Tr. at 4-5). However, during that conference, Godley also remarked that he was attempting to hire private counsel. (*Id.* at 20-22). Similarly, at a November 18, 2016 pretrial conference, Godley vacillated between asserting that he was representing himself and stating that he intended to retain private counsel to represent him. (*See* Nov. 18, 2016 Tr. at 1-6). During these two conferences, Godley appeared to continually change his mind about representing himself. However, the trial court *did not* accept Godley's waiver of his right to counsel and grant his request for self-representation at either conference. (*See* Nov. 7, 2016 Tr.

at 12, 27); (Nov. 18, 2016 Tr. at 20). Instead, the trial court only accepted Godley's waiver and granted his request to represent himself at the January 27, 2017 pretrial conference, at which point Godley was unwavering in expressing his intention to proceed without counsel.

{¶36} Likewise, Godley demanded self-representation during the course of an emotional outburst at another pretrial conference on December 21, 2016. Throughout the entirety of this conference, Godley was belligerent and uncooperative, and he repeatedly objected to representation by his court-appointed counsel because of a supposed "conflict" between himself and his counsel. (*See* Dec. 21, 2016 Tr. at 3-4). Shortly before he was removed from the courtroom for launching a disruptive, profanity-ridden attack against his court-appointed counsel and the trial court, Godley exclaimed that he was "representing [himself]." (*Id.* at 7). (*See id.* at 10-11). Again, however, the trial court *did not* respond to Godley's impulsive statements by excusing Godley's court-appointed counsel and permitting Godley to represent himself.

{¶37} Ultimately, the trial court only accepted Godley's waiver of his right to counsel and granted his request to represent himself at a pretrial conference on January 27, 2017. The January 27, 2017 conference began with Godley's court-appointed counsel informing the trial court that Godley wanted to represent himself. (Jan. 27, 2017 Tr. at 3). The trial court then asked Godley directly whether he

wanted to represent himself, and Godley responded: "Yes, I do." (*Id.* at 5). Later during the conference, Godley insisted that he "want[ed] to represent [himself]," that he was "not really asking for * * * counsel," and that he "[had] to represent [himself]." (*Id.* at 23). In addition, Godley stated that "[he would] represent [him]self before he [would allow]" his court-appointed counsel to represent him. (*Id.* at 22). Godley also remarked that he "[did] not want nobody to represent [him]" and that he would "represent [himself] first." (*Id.* at 41).

{¶38} Certainly, some of Godley's remarks at the January 27, 2017 pretrial conference could be interpreted as simply expressing frustration with his court-appointed counsel rather than as genuinely requesting that the trial court permit him to represent himself. *See State v. Jones*, 4th Dist. Athens No. 14CA7, 2014-Ohio-5177, ¶ 17-19 (concluding that Jones's statements that he would "represent [himself] if [he had] to" and that he would "rather represent [himself] than have [court-appointed counsel] represent [him]" did not constitute clear and unequivocal demands for self-representation). However, viewing these isolated comments in relation to Godley's other remarks at the January 27, 2017 pretrial conference, we conclude that Godley clearly and unequivocally invoked his right to self-representation. Importantly, the conference did not commence with Godley proclaiming that he wished to represent himself; instead, the conference began with Godley's court-appointed counsel stating that it was his belief that "after meeting

with Mr. Godley a couple times over the [previous two] weeks, and then meeting with him again th[at] morning," Godley "wish[ed] to represent himself * * *." (Jan. 27, 2017 Tr. at 3). Godley's court-appointed counsel's statement suggests that Godley's decision to request self-representation was not made capriciously or out of frustration with his court-appointed counsel's performance at that particular conference, but rather that the decision was made deliberately and well in advance of the pretrial conference. In addition, the trial court then asked Godley whether he intended to represent himself, to which Godley plainly and unambiguously responded that he did. (*Id.* at 5). Godley's further statements that he did not want anybody to represent him and that he wanted to represent himself reflect a similarly unambiguous commitment to self-representation. (*See id.* at 23, 41). Ultimately, the trial court was in the best position to observe Godley's demeanor and evaluate whether his request for self-representation was sincere or whether it was the product of frustration or a momentary whim. *See Kramer*, 2016-Ohio-2984, at ¶ 10, citing *Jones* at ¶ 18, citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77 (1984).

{¶39} Finally, Godley argues that the trial court erred by accepting his waiver of his right to counsel and granting his request to represent himself because he did not knowingly, intelligently, and voluntarily waive his right to counsel. Godley argues that the trial court did not "undert[ake] the required colloquy to insure Godley * * * understood his rights" and that the "trial court never specifically

articulated all of the rights waived by proceeding without counsel." (Appellant's Brief at 12, 30). In particular, Godley contends that the trial court did not question Godley about his "education, his ability to read and write at a competent level or if he was on any medications or had any physical or emotional issues that might preclude him from undertaking the task." (*Id.* at 12). Further, Godley argues that "[t]here was no discussion as to whether he had even a rudimentary understanding of the rules of criminal procedure, the rules of evidence or basic 4th Amendment issues." (*Id.*). Finally, Godley asserts that his answers to the questions the trial court did ask were "non-responsive and incoherent" and that he "struggled with understanding the proceeding." (*Id.* at 10).

{¶40} We conclude that Godley knowingly, intelligently, and voluntarily waived his right to counsel. First, the information conveyed to Godley by the trial court regarding his constitutional right to counsel and the dangers inherent in self-representation was sufficient to ensure that Godley was made "aware of the dangers and disadvantages of self-representation, [such] that * * * 'he kn[ew] what he [was] doing and his choice [was] made with eyes open.'" *Faretta*, 422 U.S. at 835, quoting *Adams*, 317 U.S. at 279. The trial court instructed Godley that he had a constitutional right to counsel and that he was giving up that right by representing himself. (Jan. 27, 2017 Tr. at 7). The trial court also advised Godley that he would be required to follow the rules of evidence, that the trial court would not help him

represent himself, and that he was effectively waiving his right to later assert that he received the ineffective assistance of counsel. (*Id.* at 8). In addition, the trial court provided him with a lengthy description of the charges against him and the maximum penalties he could face if convicted of those charges. (*Id.* at 9-10). The trial court told Godley that his case could be tried before a jury of 12 people and that he was presumed innocent until proven guilty. (*Id.* at 10-12). The trial court then opined that Godley was making a grave mistake by choosing to represent himself and informed Godley about the services an attorney could provide him that he would be incapable of providing himself. (*Id.* at 12-17). The trial court also instructed Godley that he could rescind his waiver of counsel at any time. (*Id.* at 18). Finally, Godley endorsed a written waiver which specified that he understood that he was bound by the rules of criminal procedure. (Doc. No. 84). Godley's signature on the waiver form also served as an acknowledgement that he understood what the trial court explained in the attempted colloquy. (*Id.*). Altogether, the trial court's warnings were adequate to ensure that Godley possessed the minimum amount of information necessary to make a knowing, intelligent, and voluntary waiver of his right to counsel. *See Tucker*, 2016-Ohio-1353, at ¶ 15.

{¶41} In addition, the trial court's attempted colloquy is not defective simply because it failed to explore the extent of Godley's understanding of the rules of evidence, the rules of criminal procedure, or basic Fourth Amendment issues.

Godley's "technical legal knowledge" is not "relevant to an assessment of his knowing exercise of the right to defend himself." *Faretta* at 836. Rather, what is important is that Godley was aware that he would be expected to abide by the rules of evidence and criminal procedure regardless of the degree of mastery he possessed over them. Between the trial court's attempted colloquy and the waiver form, Godley was informed that he would be bound by the rules of evidence and the rules of criminal procedure as if he were a licensed attorney. Therefore, the trial court's failure to explore whether Godley possessed a detailed understanding of those rules is immaterial. The trial court was not required to """undertake pseudo-legal representation""" of Godley by ensuring that he had a complete understanding of the rules of evidence and criminal procedure and basic Fourth Amendment issues. *See Yeager*, 2018-Ohio-574, at ¶ 6, quoting *State v. Bloodworth*, 9th Dist. Summit No. 26346, 2013-Ohio-248, ¶ 12, quoting *Ragle*, 2005-Ohio-590, at ¶ 12.

{¶42} Finally, Godley's disruptive, recalcitrant demeanor throughout the course of the trial court's attempted colloquy and his failure to acknowledge that he even heard the trial court's warnings do not undermine our conclusion that Godley knowingly, intelligently, and voluntarily waived his right to counsel. As other courts have previously recognized, most "cases discussing waiver of counsel and self-representation 'presuppose[] a cooperative defendant willing to engage in reciprocal dialogue with the court' rather than 'an uncooperative defendant [who]

has refused to accept appointed counsel or engage in a colloquy with the court.'" *Tucker* at ¶ 13, quoting *United States v. Garey*, 540 F.3d 1253, 1263 (11th Cir.2008). However, although a defendant may refuse to engage in a "reciprocal dialogue" with the trial court regarding the defendant's right to counsel and the hazards of self-representation, the defendant's refusal to cooperate does not preclude a conclusion that the defendant knowingly, intelligently, and voluntarily waived his right to counsel. *See, e.g.*, *Garey* at 1267-1270; *United States v. Estrada*, 530 Fed.Appx. 852, 856-858 (11th Cir.2013). For example, the Ninth District Court of Appeals in *State v. Tucker* addressed a scenario similar to the one presented in this case. There, Tucker "repeatedly frustrated the court's attempt to engage him in a dialogue about his waiver by refusing to answer questions, posing objections to the legitimacy of the court and the proceedings, and demanding the trial court's oath of office." *Tucker* at ¶ 14. Nevertheless, the Ninth District concluded that Tucker "engaged the trial court and participated in the proceedings in a manner that [was] sufficient to demonstrate that he knowingly, intelligently, and voluntarily waived the right to counsel." *Id.* at ¶ 16.

{¶43} Likewise, we conclude that, despite his antagonism and defiant behavior, Godley participated in and demonstrated an understanding of the proceedings sufficient to indicate that he knowingly, intelligently, and voluntarily waived his right to counsel. *See Tucker*, 2016-Ohio-1353, at ¶ 16-17. First, by the

time the trial court accepted Godley's waiver of counsel, Godley steadfastly insisted that he did not want to be represented by counsel and that he wished to represent himself. *See id.* at ¶ 16. Moreover, Godley actively participated in pretrial proceedings by filing numerous motions and cross-examining witnesses. *See id.* In fact, Godley's motions were granted in full or in part on more than one occasion. Furthermore, at a March 10, 2017 hearing, Godley informed the trial court that "if [he] decide[d] for counsel * * * [he would] let the courts know but as of right [then], [he was] fine with representing [himself]" and that he knew he could opt for representation by his standby counsel. (Mar. 10, 2017 Tr. at 27). Godley's statements confirm that he understood that he had a right to counsel and that he could invoke that right at any time. *See Tucker* at ¶ 16.

{¶44} In sum, we conclude that the trial court substantially complied with Crim.R. 44(A) and that, based on the totality of the circumstances, Godley knowingly, intelligently, and voluntarily waived his right to counsel. *Id.* at ¶ 18.

{¶45} Godley's assignment of error is overruled.

{¶46} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ZIMMERMAN and SHAW, J.J., concur.**

**/jlr**